# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:17-cr-00036-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| ALAN PETER DARCY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion to Reconsider" [Doc. 55]; the Defendant's "Supplement to Motion to Reconsider" [Doc. 56]; the Defendant's "Motion for Sentence Modification and Release" [Doc. 57]; the Government's "Consolidated Opposition to Defendant's Multiple Motions for Release" [Doc. 58]; the Defendant's "Withdrawal of Motion to Reconsider" [Doc. 60]; the Defendant's "Motion to File an Emergency Motion" [Doc. 61]; and the Defendant's "Reply to Government's Consolidated Opposition to Defendant's Multiple Motions for Release" [Doc. 62].

## I. PROCEDURAL BACKGROUND

In February 2018, the Defendant was convicted of one count of wire fraud, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1343 and 2. [Doc. 33]. He was sentenced to a term of 108 months' imprisonment. [Id.]. The Defendant is currently incarcerated at the low security Federal Correctional Institution in Butner, North Carolina ("Butner Low").

On April 9, 2020, the Defendant, through counsel, moved the Court to order his temporary release to home detention pursuant to 18 U.S.C. § 3142(i) and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 12003(b)(2) (2020). [Doc. 53]. Noting that the discretion to release a prisoner to home confinement lies solely with the Attorney General, see 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g), the Court denied the Defendant's motion on April 14, 2020.[1] [Doc. 54].

On April 21, 2020, the Defendant's counsel filed a motion seeking reconsideration of the Court's April 14, 2020 Order. [Doc. 55]. Attached to

---

[1] The Court further noted that the Defendant's reliance upon 18 U.S.C. § 3142(i) was misplaced, as that statutory provision addresses only the release or detention of a defendant *pending trial*, not the release of a defendant who has been convicted and sentenced to a term of imprisonment. [Doc. 54 at 3].

2

counsel's motion is a motion entitled "Emergency Motion" apparently drafted by the Defendant himself, asserting Eighth Amendment claims arising from prison officials' alleged failure to protect him from the risk of contracting COVID-19. [Doc. 55-1]. On April 22, 2020, counsel filed a supplement to the motion for reconsideration, citing a newspaper article and email communications from the Bureau of Prisons ("BOP") regarding the cases of COVID-19 within the Butner Correctional Complex.[2] [Doc. 56]. Five days later, on April 27, 2020, counsel filed a motion for a reduction in the Defendant's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 57].

On April 28, 2020, the Government filed a consolidated opposition to the Defendant's various motions. [Doc. 58]. Thereafter, the Defendant's counsel sought an extension of time to file a reply to the Government's opposition. [Doc. 59]. The Court granted counsel's motion, extending the time for filing a reply until May 13, 2020. [Text-Only Order entered May 1, 2020].

On May 13, 2020, counsel filed a notice of withdrawal of both the Motion to Reconsider and the Supplement to Motion to Reconsider. [Doc. 60]. Additionally, counsel filed a motion, asking the Court to give the

---

[2] Counsel, however, did not attach the cited documents to the Supplement.

3

Defendant "21 days within which to file an emergency motion generally consistent with the exhibit attached to the motion to reconsider." [Doc. 61 at 1]. Finally, counsel filed a reply to the Government's consolidated opposition. [Doc. 62].

## II. DISCUSSION

### A. Defendant's Motion for a Reduction in Sentence

With the withdrawal of the Motion to Reconsider and the Supplement thereto, the only motion for release remaining for the Court to consider is the Defendant's Motion for Sentence Modification and Release, which was filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 57]. In this motion, the Defendant seeks a compassionate release in light of his chronic health conditions and the ongoing COVID-19 pandemic. He further contends that exhaustion of his administrative remedies with respect to his request for compassionate release would be futile because "he would suffer severe consequences, even death, were he to contract that virus." [See id. at 3].

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). By its plain language, § 3582(c)(1)(A) makes clear that a defendant must first exhaust all administrative remedies or wait thirty days after submitting a request for release from the warden before filing a motion for a sentence reduction. Further, the Court of Appeals for the Fourth Circuit has held that a district court lacks the authority to modify a sentence except in the narrow circumstances and procedures set forth in § 3582. See United States v. Goodwyn, 596 F.3d 233, 235 (4th Cir. 2010).³

While some courts have waived the exhaustion requirement for compassionate release motions in light of the COVID-19 pandemic, see United States v. Feiling, No. 3:19cr112 (DJN), 2020 WL 1821457, at *4 (E.D. Va. Apr. 10, 2020) (collecting cases), other courts have been reluctant to

---

³ The Fourth Circuit has not yet ruled on whether the exhaustion requirements in § 3582(c)(1)(A) are jurisdictional or merely a claims-processing rule. This Court, however, need not decide that issue in order to resolve the present motion. Either way, the Defendant must exhaust his administrative remedies as defined in § 3582(c)(1)(A) before filing a motion for compassionate release in this Court. See Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding that "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion"); United States v. Williams, No. CR JKB-15-0646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020) (denying motion for reduction of sentence because defendant failed to exhaust his administrative remedies, but declining to decide whether exhaustion requirement is jurisdictional).

5

grant such waivers. For example, the Third Circuit in <u>United States v. Raia</u> held that a prisoner's failure to exhaust all administrative remedies set forth in § 3582(c)(1)(A) warranted the denial of his motion for compassionate release. 954 F.3d 594, 597 (3d Cir. 2020). In so holding, the Third Circuit stated that it did not intend to minimize the risks that COVID-19 poses to the health of federal inmates. However, the Court noted, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the BOP's statutory role, and its extensive professional efforts to curtail the virus's spread." <u>Id.</u>[4] The Court went on to state as follows:

> Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP prioritize the use of its various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic, we anticipate that the statutory requirement will be speedily dispatched in cases like this one.

---

[4]Citing Federal Bureau of Prisons, <u>COVID-19 Action Plan</u> (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp.

6

Id. (citation and internal quotation marks omitted). Other courts, including district courts within the Fourth Circuit, have followed Raia's example and continued to require the full exhaustion of administrative remedies before considering motions for compassionate release related to the COVID-19 pandemic. See United States v. Smith, No. 3:16-cr-48 (MPS), 2020 WL 1903160, at *3 (D. Conn. Apr. 17, 2020); United States v. Meron, No. 2:18-cr-0209-KJM, 2020 WL 1873900, at *2 (E.D. Cal. Apr. 15, 2020); United States v. Hembry, No. 12-cr-00119-SI-1, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020); Feiling, 2020 WL 1821457, at *5; United States v. Gillis, No. 14-cr-00712 SJO (1), 2020 WL 1846792, at *2 (C.D. Cal. Apr. 9, 2020); United States v. Perry, No. 18-cr-00480-PAB, 2020 WL 1676773, at *1 (D. Colo. Apr. 3, 2020); United States v. Carver, -- F. Supp. 3d --, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020); United States v. Clark, No. 17-85-SDD-RLB, 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020); United States v. Oliver, No. JKB-16-0485, 2020 WL 1505899, at *1 (D. Md. Mar. 30, 2020); United States v. Zywotko, No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); United States v. Eberhart, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); United States v. Cohen, No. 19cr602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24,

2020); United States v. Gileno, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020). The Court agrees with Raia and the cases cited above and therefore joins these courts in holding that the mere existence of the COVID-19 pandemic and the Defendant's potential susceptibility to that illness due to pre-existing health conditions does not render the exhaustion of administrative remedies futile.

In his reply brief, the Defendant shifts his argument to assert that he, in fact, has exhausted his administrative remedies with respect to his request for a sentence reduction. In support of this contention, he attaches communications between BOP officials and defense counsel, as well as a letter from defense counsel to Attorney General William Barr. [See Docs. 62, 62-1, 62-2, 62-3]. All of these communications, however, relate to the Defendant's request for a release to home confinement under the CARES Act, not to a request for compassionate release pursuant to § 3582(c)(1)(A)(i). There is nothing in the record before this Court to indicate that the Defendant has submitted a request for compassionate release to the warden of his Bureau of Prisons facility or that he has otherwise exhausted his administrative remedies with respect to BOP's failure to bring such a motion on his behalf.

8

Even if defense counsel's cited communications with the BOP could be construed as a full exhaustion of his administrative remedies regarding his request for compassionate release, the Defendant's motion must still be denied. A reduction under § 3582(c)(1)(A) must be consistent with applicable policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Sentencing Guidelines § 1B1.13 is the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. The commentary to § 1B1.13 provides the following specific and limited grounds for release under § 3582(c)(1)(A): (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or

75% of his term of imprisonment, whichever is less.  Id., § 1B1.13 cmt. n.1(B).

Here, the Defendant asserts that he is in excess of 80 years of age; that he has a history of heart issues, including a history of heart attacks and congestive heart failure; that he is nearly blind because of macular degeneration; that he experiences chronic pain; that he has a history of transient ischemic attacks; that he experiences severe bursitis in his right shoulder; and that he has a history of respiratory issues, including bronchitis and COPD.  The Defendant has not shown, however, that any of these physical maladies "substantially diminish" his ability to provide self-care within the correctional facility at which he is housed.  He also has not asserted that any of his conditions are terminal, or that they are untreatable in the Bureau of Prisons.  While the Defendant is over the age of 65,[5] he not established that he has experienced a "serious deterioration" of his health due to the ageing process.[6]  Finally, the mere fact that the Defendant faces

---

[5] It is noted, however, that the Defendant filed his initial motion in this series only 13 *days* after beginning the service of his 108 month sentence.

[6] The Court notes that during the time period in which the Defendant has suffered these various health issues is the period in which he engaged in a scheme to defraud victims of more than $800,000 by inducing them to invest in a variety of bogus financial instruments and products, including among other things, fraudulent "cash flow contracts," "Joint Participation Agreements" and leased "Bank Guarantees" through Sceptre LLC,

10

a potential risk of contracting COVID-19 is not sufficient to justify his release. See Raia, 954 F.3d at 597 ( "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread").

For all these reasons, the Defendant's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) is denied.

## B. Defendant's Motion to File an Emergency Motion

With the Motion to Reconsider withdrawn, defense counsel moves the Court to give the Defendant "21 days within which to file an emergency motion generally consistent with the exhibit attached to the motion to reconsider." [Doc. 61 at 1]. To the extent that counsel is seeking the extension of a deadline within which to file such a motion, such request must be denied as no such deadline exists. Further, to the extent that the Defendant is seeking to challenge the conditions of his confinement, the Defendant is advised that any such claims must be brought in a civil action.

---

Mission 1, LLC and related entities controlled by the Defendant. [See Doc. 25: PSR at ¶ 4].

He cannot challenge the conditions of his confinement through a motion in his criminal case. See United States v. Carmichael, 343 F.3d 756, 760-61 (5th Cir. 2003); United States v. McConneyhead, 2 F. App'x 330, 331 (4th Cir. 2001); United States v. Andrews, No. 1:12-cr-100, 2014 WL 1379683, at *3 (N.D. W. Va. Apr. 8, 2014). For all these reasons, the "Motion to File an Emergency Motion" must be denied.

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

(1) The Defendant's "Motion to Reconsider" [Doc. 55] and the Defendant's "Supplement to Motion to Reconsider" [Doc. 56] are deemed **WITHDRAWN**;

(2) The Defendant's "Motion for Sentence Modification and Release" [Doc. 57] is **DENIED WITHOUT PREJUDICE** to refiling after the Defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the Defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the Defendant's facility, whichever is earlier; and

(3) The Defendant's "Motion to File an Emergency Motion" [Doc. 61] is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Signed: May 21, 2020

Martin Reidinger
United States District Judge